# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

**HILTON ADORNO ROSARIO,**

**Plaintiff,**

**v.**                                                     CIVIL NO. 12-1058 (GAG)

**UNITED STATES OF AMERICA,**

**Defendant.**

## OPINION AND ORDER

On January 27, 2011, Hilton Adorno-Rosario ("Plaintiff") filed this action against the United States of America ("Defendant"), alleging that, while incarcerated at the Metropolitan Detention Center ("MDC"), he was not given adequate medical attention. Plaintiff attributes his health complications that caused the permanent disability of his left foot to Defendant's negligence. (See Docket No. 1.)  Plaintiff sues Defendant for negligence through the Federal Tort Claims Act ("FTCA"). See 28 U.S.C. § 2680.  Defendant filed a motion for summary judgment at Docket No. 30, denying negligence on behalf of MDC medical staff and requesting the court to find Defendant not liable for Plaintiff's injuries. Plaintiff failed to oppose Defendant's Motion for Summary Judgment.[1] After reviewing these submissions and the pertinent law, the court **GRANTS** Defendant's motion for summary judgment.

## I.    Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  See FED. R. CIV. P. 56(a).  "An issue

---

[1] Despite Plaintiff's request for extended time to oppose Defendant's motion for summary judgment, an opposition was never filed.  To that effect, the court ordered the motion for summary judgment to be treated as unopposed. (See Docket Nos. 31 & 33.)

**Civil No. 12-1058 (GAG)**

1    is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it

2    'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson

3    v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

4    The moving party bears the initial burden of demonstrating the lack of evidence to support the non-

5    moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to

6    support the nonmoving party's case. The burden then shifts to the nonmovant to establish the

7    existence of at least one fact issue which is both genuine and material." Maldonado-Denis v.

8    Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is

9    genuinely in dispute by citing particular evidence in the record or showing that either the materials

10   cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse

11   party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the

12   court finds that some genuine factual issue remains, the resolution of which could affect the outcome

13   of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477

14   U.S. 242, 248 (1986).

15       When considering a motion for summary judgment, the court must view the evidence in the

16   light most favorable to the non-moving party and give that party the benefit of any and all reasonable

17   inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make

18   credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate,

19   however, if the non-moving party's case rests merely upon "conclusory allegations, improbable

20   inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21

21   (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

22       An unopposed summary judgment "does not automatically give rise to a grant of summary

23   judgment. Instead, 'the district court [is] still obliged to consider the motion on its merits, in light

24   of the record as constituted, in order to determine whether judgment would be legally appropriate.'"

25   Aguiar-Carrasquillo v. Agosto Alicea, 445 F.3d. 19, 25 (2006) (citing Mullen v. St. Paul Fire and

26   Marine Ins. Co., 972 F.2d 446, 452 (1st Cir.1992)). It is well-settled that "before granting an

27

28                                          2

**Civil No. 12-1058 (GAG)**

unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." Id. (citing López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1517 (1st Cir. 1991)).

## II.     Relevant Factual Background

On February 13, 2009, Plaintiff was incarcerated at the MDC in Guaynabo, Puerto Rico. (See Docket No. 30-2 ¶ 2.)  On the day of his incarceration, MDC medical staff administered Plaintiff an initial physical examination. (Id. ¶ 2.) Shortly thereafter, the staff performed a complete physical examination.  Nothing indicated Plaintiff suffered from any previous medical conditions. Id.

Plaintiff's alleged inadequate medical treatment took place from July 24, 2009 to March 9, 2011.  On July 24, 2009, Plaintiff sought help from MDC medical staff, complaining of pain in his left foot.  (Id. ¶ 3.)  After being evaluated by a mid-level practitioner, his foot was found to be swollen, x-rays were ordered and antibiotics and pain medication were prescribed.  Id.  Despite his treatment, Plaintiff continued to complain about pain.  Id.   In response, MDC medical staff conducted daily follow-up examinations.  Plaintiff was diagnosed with an abscess formation on his left foot and was evaluated by the clinical director at MDC. (Docket No. 30-2 ¶ 4.)  He was given crutches, prescribed stronger antibiotics and had the abscess drained.  (Id. ¶ 3.)  On July 29, 2009, MDC medical staff found no improvement, despite treatment.  Plaintiff was taken to Pavia Hospital in Santurce, Puerto Rico, where he was admitted for further treatment.  (Docket No. 30-2 ¶ 6.) Under hospital care, he underwent a surgical drainage procedure and remained hospitalized throughout his recovery.  (Id. ¶ 7.)  Upon discharge, Plaintiff was ordered to continue antibiotic treatment for fifteen days.  Back at MDC he was administered post-surgical care as directed by hospital staff. (Docket No. 30-2 ¶¶ 9-10.)

A few months after his hospitalization, Plaintiff visited the MDC medical center on multiple occasions.  Some visits were not related to his foot condition.  (Docket No. 30-2 ¶¶ 9-10.)  On July 15, 2010, almost a year after his treatment and hospitalization, complaints regarding Plaintiff's left

Civil No. 12-1058 (GAG)

1  foot resurfaced.  (Docket No. 30-2 ¶ 13.)  At that time, Plaintiff said he experienced difficulty

2  walking.  (Docket No. 30-2 ¶¶ 9-10.)  On September 16, 2010, an MDC physician diagnosed

3  Plaintiff with parenthesia and decreased motor dorsiflexion. (Docket No. 30-2 ¶ 15.) Around March

4  2011, Plaintiff was seen by a physician at the chronic care clinic due to his continuing complaints

5  of hypersensitivity and difficulty walking. (Docket No. 30-2 ¶¶ 16-17.)

6       Plaintiff filed an FTCA claim with the Bureau of Prisons ("BOP"), alleging personal injury

7  due to the negligent medical care provided by the MDC medical staff, claiming $300,000 in

8  damages. (Docket No. 30-2 ¶ 1.)  The claim was denied by the BOP. Id.

9       Plaintiff was examined by an expert podiatrist, Doctor Joaquin F. Balaguer ("Balaguer").

10 After conducting a physical examination and evaluating Plaintiff's medical records, Balaguer

11 diagnosed Plaintiff with Morton's Neuroma or scar tissue nerve entrapment in the area where the

12 incision and drainage procedure was performed. (See Docket No. 30-2 ¶18, 19, 23.)

13 **III.    Discussion**

14       A.    Federal Tort Claims Act

15       Defendant seeks summary dismissal of Plaintiff's claim. (See Docket No. 30-1.)  Plaintiff

16 brings this claim pursuant to the FTCA, which states:

17        the district courts . . . shall have exclusive jurisdiction of civil actions on
         claims against the United States, for money damages . . . for injury or loss of
18        property, or personal injury or death caused by the negligent or wrongful act
         or omission of any employee of the Government while acting within the
19        scope of his office or employment, under circumstances where the United
         States, if a private person, would be liable to the claimant in accordance with
20        the law of the place where the act or omission occurred.

21 28 U.S.C. § 1346(b)(1).  As stated, courts apply the law of the jurisdiction in which the act took

22 place. Gonzalez-Rucci v. I.N.S., 539 F.3d 66, 69 (1st Cir. 2008).  Puerto Rico's general negligence

23 statute states, "A person who by an act or omission causes damage to another through fault or

24 negligence shall be obliged to repair the damage so done."  P.R. LAWS ANN. tit. 31, § 5141.  See

25 Diaz Aviation Corp. v. Airport Aviation Servs., Inc. 716 F.3d. 256. 265 (1st Cir. 2012).  This has

26 been interpreted to require a plaintiff to demonstrate: "(1) a duty requiring the defendant to conform

27

28                                    4

**Civil No. 12-1058 (GAG)**

to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct." Woods-Leber v. Hyatt Hotels of P.R., Inc., 124 F.3d 47, 50 (1st Cir. 1997) (citing Sociedad de Gananciales v. Gonzalez Padin, 17 P.R. Offic. Trans. 111, 125 (1986)).

In order to establish a *prima facie* case of medical malpractice, "[A] plaintiff must establish (1) the duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances), (2) an act or omission transgressing that duty, and (3) a sufficient causal nexus between the breach and the claimed harm." Cortes-Irizarry v. Corporacion Insular de Seguros, 111 F.3d 184, 189 (1st Cir. 1997) (citing Lama v. Borras, 16 F.3d 473, 478 (1st Cir.1994)); Rolon-Alvarado v. Mun. of San Juan, 1 F.3d 74, 77 (1st Cir. 1993.)).

Puerto Rico law has established a national standard of medical care which holds all health-care providers to "a duty to use the same degree of expertise as could reasonably be expected of a typically competent practitioner in the identical specialty under the same or similar circumstances, regardless of regional variations in professional acumen or level of care." Martinez-Serrano v. Quality Health Serv. of P.R., 568 F.3d 278, 285 (1st Cir. 2009) (citing Oliveros v. Abreu, 1 P.R. Offic. Trans. 293, 313 (1973); Rolon-Alvarado, 1 F.3d at 77–78).

Defendant argues that Plaintiff cannot demonstrate the medical care provided by MDC was inadequate. (Docket No. 30-1.) In order to prove Plaintiff's medical treatment was adequate, Defendant provides Balaguer's testimony. (Docket No. 30-19.) Based on his opinion, and after examining Plaintiff and reviewing his medical records, Balaguer concludes that MDC staff provided Plaintiff adequate medical care, in line with the requirements and expectations of podiatry practitioners nationwide. Id. He further explains that Plaintiff's medical condition is a common, unpredictable complication of Plaintiff's surgery. (Docket No. 30-2 ¶¶ 18,19, 23.) Balaguer also believes that Plaintiff may have omitted details regarding his medical history during the initial evaluations conducted upon his incarceration. Id. His testimony and Plaintiff's medical records support Defendant's argument.

Viewing the evidence in the light most favorable to Plaintiff, a breach of duty by Defendant

**Civil No. 12-1058 (GAG)**

1

2

cannot be established.  Plaintiff failed to oppose and provide evidence to prove Defendant's

negligence. This is his burden.  Rolon-Alvarado 1 F.3d. at 78.  Based on the evidence in record, no

3

4

genuine issue of fact exists as to the adequacy of Plaintiff's medical care.  Without a breach of the

duty owed, the court cannot find Defendant liable as to Plaintiff's injuries.  Judgment in favor of

5

Defendant is appropriate.

6

For the aforementioned reasons, the court **GRANTS** Defendant's motion for summary

7

judgment at Docket No. 30.

8

B .    Federal Rule of Civil Procedure 41(b)

9

Rule 41(b) of the Federal Rules of Civil Procedure grants a court authority to involuntarily

10

dismiss actions for plaintiff's failure to prosecute.  District court judges inherently hold the authority

11

to regulate their dockets and First Circuit precedent permits district court judges to rely upon Rule

12

41(b) when considering whether to involuntarily dismiss a case.  Garcia-Perez v. Hosp.

13

Metropolitano, 597 F.3d 6, 7 (1st Cir. 2010); see also Link v. Wabash R.R. Co., 370 U.S. 626, 629-

14

33 (1962).  A district court must balance its "venerable authority over case management with the

15

larger concerns of justice, including the strong presumption in favor of deciding cases on the merits."

16

Malot v. Dorado Beach Cottages, 478 F.3d 40, 43 (1st Cir. 2007).  However, Rule 41(b) presumes

17

dismissal on the merits, unless the court states otherwise.  It is considered a harsh and severe

18

sanction, reserved for situations when Plaintiff's misconduct is extreme to dismiss a case for lack

19

of prosecution.  Enlace Mercantil v. Senior Industries, 848 F.2d. 315, 317 (1988).

20

21

22

23

24

> In all the cases in which we have upheld a dismissal for want of prosecution,
> we have found either extremely protracted inaction (measured in years),
> disobedience of court orders, ignorance of warnings, contumacious conduct,
> or some other aggravating circumstance. Other aggravating circumstances
> include prejudice to the defendant, glaring weaknesses in the plaintiff's case,
> and the wasteful expenditure of a significant amount of the district court's
> time. Unless the district court explicitly limits its rationale for dismissing the
> case, it is proper in reviewing for "extreme" misconduct to consider all of the
> aggravating circumstances together.

25

Id. (citing Cosme Nieves v. Deshler, 826, 826 F.2d. 1, 2 (1st Cir. 1987)).

26

Plaintiff counsel's case management throughout the entire case exemplifies a failure to

27

28

6

**Civil No. 12-1058 (GAG)**

prosecute. The record shows a marked absence on Plaintiff's behalf, such as failure to present an expert report, despite having requested an extension of time, and being compelled to do so by the opposing party.  (See Docket Nos. 19, 20, 24 & 27-29.)  Plaintiff also failed to oppose Defendant's motion for summary judgment, despite having requested extended time to file.  (Docket Nos. 31 & 33.)  Other than filing the complaint, Plaintiff has not filed subsequent substantive motions in order to adequately advance his claims.  The court is mindful of its duty to respect counsel's litigation strategies.  However, the court may intervene when counsel's actions, or lack thereof, hinder plaintiff's claims.  Plaintiff filed his complaint on January, 27, 2012.  He requested and was given additional time on multiple occasions.  As of today, twenty-two months have elapsed without prosecution. This case is also dismissed for failure to prosecute under Rule Rule 41(b).


**SO ORDERED**.

In San Juan, Puerto Rico this 4th day of November, 2013.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge